UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**BRIAN LERON HAMILTON, #295653**

    Petitioner,

                                    Civil No: 04-CV-72942
                                    Honorable Bernard A. Friedman
                                    Magistrate Judge R. Steven Whalen

v.

**KURT JONES**[1],

    Respondent.

_____

## OPINION & ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

**I. Introduction**

This habeas matter is before the Court on Petitioner's *pro se* request for habeas relief pursuant to 28 U.S.C. §2254. Respondent filed his "Answer in Opposition to Petition for Writ of Habeas Corpus." Petitioner was convicted of first-degree murder in violation of MCL §750.316, four counts of attempted murder in violation of §750.91, and arson of a dwelling in violation of MCL §750.71. Subsequent to a jury trial in Wayne County Circuit Court, on September 3, 1999, Petitioner was sentenced to concurrent terms of life imprisonment for the first-degree murder conviction, thirty to fifty years imprisonment for the first count of attempted murder and twenty to thirty years for the remaining three counts of attempted murder, and thirteen years four months to twenty years on the arson conviction.

---

[1] Petitioner remains incarcerated at the Carson City Correctional Facility. However, the warden presently in place is no longer Kurt Jones, the named Respondent in this case. The current warden is Thomas K. Bell.

Petitioner challenges the legality of his conviction and raises one claim with two sub-parts for the Court's review. Petitioner's primary issue is whether defense counsel provided ineffective assistance of counsel when he failed to present evidence of Petitioner's comprehensive disability. The two sub-issues are: (1) whether the trial attorney's failure to introduce to the jury Petitioner's language disabilities was an unreasonable strategy; and (2) whether the jury verdict would have been different if trial counsel had presented such evidence to the jury. Respondent argues that the Michigan Court of Appeals' determination that Petitioner's trial counsel provided effective assistance was not the result of an unreasonable application of *Strickland v. Washington,* 466 U.S. 668 (1984).

Upon review of the pleadings and for the reasons set forth below, the Court will deny Petitioner's request for habeas relief.

## II. Statement of Facts

Petitioner's conviction arises out of an arson fire in an apartment building in the City of Detroit. As a result of the fire, one person died and several others were injured. It is undisputed that Jeremy Mosley set the fire following a fight with one of the tenants. However, Mr. Mosley implicated Petitioner. Subsequently, Petitioner was questioned by the police on two occasions, at which time Petitioner provided statements. The first time, Petitioner voluntarily came into the police station for questioning and was not under arrest. Sergeant Arlie Lovier asked Petitioner questions and Officer Mitchell wrote down the answers. Petitioner signed and dated each page of the statement and was subsequently driven home by the police.

Subsequent to his ultimate arrest, Petitioner was interrogated again by Sergeant Lovier alone. During this interrogation Petitioner was read his *Miranda*[2] rights, was given a waiver of *Miranda*

---

[2]*Miranda v. Arizona,* 384 U.S. 436 (1966)

rights form where he indicated that he could read and write; and he signed and dated the form. Petitioner then proceeded to answer questions posed by Sergeant Lovier which were transcribed by Sergeant Lovier in writing. Petitioner was given the statement to sign and date.

The crux of Petitioner's statement is three-fold: (1) that he provided Mr. Mosley access to a gas can; (2) that Petitioner acted as a "look-out" for Mr. Mosley while Mr. Mosley set the fire; and (3) Petitioner was aware that people could be injured as a result of this fire being set. Petitioner's statement was admitted at trial despite trial counsel's efforts to keep the statement away from the jury by filing a suppression motion.

### III. Procedural History

Subsequent to a jury trial in Wayne County Circuit Court, on September 3, 1999, Petitioner was convicted of the above stated offenses. Petitioner filed a motion for a new trial and a motion for reconsideration claiming that he had been denied his constitutional right to effective assistance of counsel and that the verdict was against the great weight of the evidence. Petitioner appealed his conviction as a matter of right to the Michigan Court of Appeals and posed three issues for the court's review; (1) whether there was sufficient evidence to convict of the charged crimes; (2) whether Petitioner was denied effective assistance of counsel due to his failure to present credible evidence that would have supported Petitioner's theory that he did not make or adopt the statement attributed to him by the police; and (3) whether the arson conviction should be vacated because it served as the underlying felony for the felony-murder conviction. On June 28, 2002, in an unpublished opinion, the Michigan Court of Appeals affirmed Petitioner's convictions and sentences for first-degree felony murder and attempted murder, but vacated Petitioner's conviction and sentence for arson. *People v. Hamilton,* WL 1424407, Mich. Ct. App. No. 224956 (per curiam) (June 28, 2002).

Petitioner then filed a delayed application for leave to appeal with the Michigan Supreme Court relative to the same issues. The Michigan Supreme Court entered an order on May 8, 2003 denying relief. *People v. Hamilton,* 468 Mich. 904; 661 N.W.2d 580 (Table) Mich. Sup. Ct. No. 122195 (May 8, 2003). However, Justices Cavanagh and Kelly stated in the order that they would grant leave to appeal. *Id.*

On August 3, 2004, Petitioner filed a "Petition for Writ of Habeas Corpus" raising the above stated primary and sub-issues.

## IV. **Standard of Review**

Petitioner is entitled to writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits -

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determinate of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. §2254(d); *Harpster v. State of Ohio,* 128 F.3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor,* 529 U.S. 362, 412-23 (2000). "Avoiding these pitfalls doesn't require citation of [Supreme Court] cases-indeed, it does not even require *awareness* of [Supreme Court] cases, so

4

long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Parker,* 537 U.S. 3, 8 (2002)(per curiam opinion) (emphasis in original). "Further, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. §2254(e)(1)." *Baez v. Parker,* 371 F.2d 310, 318 (6th Cir. 2004).

## V. Discussion

### A. Ineffective Assistance of Counsel

#### 1. *Failure to Investigate & Present Evidence of Petitioner's Alleged Language Disability*

Petitioner asserts that his right to effective assistance of counsel was violated when his trial attorney failed to investigate and present evidence of Petitioner's "extraordinarily low-level of functioning with regard to his language skills." (Petition for Writ of Habeas Corpus, pg. 16). It is his position that if such evidence had been presented to the jury, they would have been convinced that Petitioner was incapable of making and adopting the inculpatory statements given to Sergeant Lovier.

The Supreme Court outlined the test governing claims of ineffective assistance of counsel in *Strickland v. Washington,* 466 U.S. 668 (1984). The benchmark for any such claim is "whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington,* 466 U.S. at 686. A claim of ineffective assistance of counsel has two components: (1) deficient performance by trial counsel; and (2) prejudice to the defendant caused by the deficient performance. *Id.* at 687-88. To establish deficient performance, "the defendant must show that his 'counsel's representation fell below an objective standard of reasonableness' as embodied in 'prevailing professional norms.'" *Riley v. Berghuis,* 481 F.3d 315, 321 (6th Cir. 2007), quoting *Strickland v. Washington,* 466 U.S. at 687-88.

As to prejudice, "'[t]he defendant must show that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Riley v. Berghuis,* 481 F.3d at 321; quoting *Strickland v. Washington,* 466 U.S. at 694. When assessing prejudice, the reviewing court must weigh the evidence in aggravation against the totality of available mitigating evidence. *Wiggins v. Smith,* 539 U.S. 510, 534 (2003).

"Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland v. Washington,* 466 U.S. at 687.

> The Supreme Court made clear that post-AEDPA claims of ineffective assistance of counsel brought by habeas petitioner's will succeed only in very limited circumstances . . . For [a petitioner] to succeed . . . . he must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under 28 U.S.C. §2254(d)(1), it is not enough to convince a federal habeas court that in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather he must show that the . . . [state] Court of Appeals applied *Strickland* to the facts of his case in an objectively unreasonable manner.

*Payne v. Bell,* 418 F.3d 644, 665 (6th Cir. 2005).

*Strickland* requires counsel "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington,* 466 U.S. at 691. The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith,* 395 F.3d 251, 258 (6th Cir. 2005). The choice not to investigate a particular defense does not constitute deficient performance "if a lawyer has made a reasonable decision that makes particular investigations unnecessary. *Adams v. Bertrand,* 453 F.3d 428, 436 (7th Cir. 2006).

Upon review of the record, the Court does not find that Petitioner was denied ineffective assistance of counsel due to a failure to investigate his language deficiencies. The Court's reasoning is two-fold. First, trial counsel indeed investigated and presented evidence of Petitioner's educational short-falls by doing the following:

- Trial counsel had Petitioner's "sister testify regarding her knowledge of his education and his learning ability and the special education classes that he had been in while residing in Oklahoma and in Detroit." (*Ginther*[3] Hearing, 12/1 /00), pg. 9)

- School records were obtained and presented from Petitioner's schools in Oklahoma and Detroit. *Id.* at 9.

- Trial counsel had Petitioner examined by a forensic psychologist, Dr. Edith Montgomery, for the purpose of assessing Petitioner's learning, language and comprehension abilities. *Id.* at 18.

- Trial counsel obtained an independent forensic evaluation from Dr. Patricia Wallace, a psychologist in private practice, for the same purpose. *Id.* at 11.

Trial counsel testified at a *Ginther* hearing that it was his intent to use Petitioner's alleged disabilities as a basis to have his statement suppressed and to present to the jury the documents and forensic testimony obtained above. However, although, Petitioner was found to be functioning at a grade level much lower than where an 18 year old, his age at the time of his arrest, should be academically[4], Dr. Montgomery's report did not support trial counsel's theory. Dr. Montgomery stated that during her examination of Petitioner, he attempted to deceive her by trying to make

---

[3] *People v. Ginther,* 390 Mich. 436; 212 N.W.2d 922 (1973)

[4] Petitioner was found to be functioning at grade school level. According to Petitioner, he has a twelfth grade education.

himself appear low functioning and mentally ill. *Id.* This alleged deception would skew Dr. Montgomery's findings. Dissatisfied with Dr. Montgomery's findings, trial counsel sought an independent forensic examination from Dr. Wallace. Her report indicated that Petitioner was not educationally disabled to the point of being incapable of understanding his *Miranda* rights or of making the incriminating statement at issue. *Id.* at 16. It was trial counsel's contention that both of these reports hurt his position relative to using Petitioner's alleged educational deficiencies as a defense; and that further investigation into this defensive theory was not a prudent use of his time. Although Petitioner was able to find a psychologist to support his position *after* his conviction,[5] this does not indicate that trial counsel did not conduct an adequate investigation into the matter.

> [W]hen facts that support a certain line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reasons to believe that pursing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

*Burger v. Kemp,* 483 U.S. 776, 795 (1987). In this case, trial counsel accepted what Petitioner told him about his inability to understand making and/or adopting the incriminating statement prepared by Sergeant Lovier and continued to investigate by obtaining school records, interviewing family members about his educational deficiencies and by obtaining two forensic psychological evaluations relative to Petitioner's alleged learning and language disabilities. Once it was clear that these reports were not favorable to Petitioner's defense, it was at that point that his investigation ceased relative to this issue. That did not deter trial counsel from filing a motion to suppress, participating in a

---

[5]Dr. Joanne Marttila Pierson

*Walker*[6] hearing and conducting a thorough cross-examination of the prosecution witnesses at trial.

"Because advocacy is an art and not a science, . . . [counsel's] strategic choices must be respected if they were "made after thorough investigation of law and facts relevant to plausible options." *Strickland v. Washington,* 466 U.S. at 690.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court examining counsel's defense after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome te presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689.

In the absence of any showing specifying the pre-trial investigation that should have been conducted and how such investigation would have aided the defense, it was reasonable for the Michigan courts to conclude that Petitioner had not demonstrated a factual basis for this ineffective assistance of counsel claim. The Court does not find that identifying a psychologist post-conviction, with the benefit of hindsight suffices as a pre-trial investigation that should have been, as trial counsel also sought psychological evaluations, thereby performing no differently than Petitioner post-conviction.

### 2. Trial Strategy in Light of the Totality of the Evidence

Petitioner maintains that his jury verdict would have been different if trial counsel had

---

[6]*People v. Walker, (On Rehearing)* 374 Mich. 331; 132 N.W.2d 87 (1965)

9

invoked a different trial strategy and presented expert testimony that Petitioner was mentally incapable of making and/or adopting the incriminating confession. The Court disagrees for three reasons. First, a finding by a psychologist that Petitioner had a low range of intelligence does not necessarily equate with him being unable to understand his *Miranda* rights and the interrogation process. See *Burke v. Johnson,* 167 F.3d 276, 285 (6th Cir. 1999). This is evident by Dr. Wallace's assessment. Second, although Petitioner found a psychologist to provide testimony favorable to his defense post-conviction, such testimony would not have necessarily exculpated the Petitioner in light of the testimony of the law enforcement officials, the circumstantial eyewitness testimony and the less than air tight alibi defense. There is case law that provides that "[a] defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant." *Millender v. Adams,* 376 F.3d 520, 527 (6th Cir. 2004). Finally, upon the Court's review of Dr. Pierson's testimony at the *Ginther* hearing in this matter, the Court is not persuaded that such testimonial evidence if produced would undermine the confidence of the resulting verdict in this case. See *Crane v. Johnson,* 178 F.3d 309, 315 (5th Cir. 1999).

## VI. Conclusion

For the foregoing reasons, the Court concludes that Petitioner's claim for habeas relief is denied.

Accordingly,

IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus **[Doc. #1-1, filed August 3, 2004]** is **DENIED** and this matter is **DISMISSED WITH PREJUDICE.**

_____s/Bernard A. Friedman_____
HONORABLE BERNARD A. FRIEDMAN
Dated:\_\_September 19, 2007      UNITED STATES DISTRICT COURT